FILED
 2011 Jul-13  AM 09:35
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERESA LYNN BROWNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 10-G-1921-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Teresa Lynn Browning, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;

(2)  whether she has a severe impairment;

(3)  whether her impairment meets or equals one listed by the Secretary;

(4)  whether the claimant can perform her past work; and

>    (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition)

> and third (reasonably expected to cause pain alleged) parts of the <u>Hand</u> standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.</u>  See 20 CFR §§ 404.1529 and 416.929; <u>Hale</u> at 1011.

<u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  <u>Foote</u> at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

<u>Hale v. Bowen</u>, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically

4

asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. <u>Id</u> at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." <u>Id.</u> If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As <u>Varney</u> recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. <u>Id.</u> This also holds true for the opinions of treating physicians.

## DISCUSSION

The ALJ, Michael L. Brownfield, found that the plaintiff has the following severe impairments: bilateral foot pain, chronic headache disorder; and lumbar disc disease. [R. 16]. On November 18, 2006, the plaintiff underwent a consultative physical examination by John Moody, M.D. Her chief complaints were bilateral foot pain and headaches. [R. 300]. The plaintiff told Dr. Moody about her activities of daily living: The claimant indicated she leaves the house approximately two days per week. She stated she can perform such household activities as cooking, cleaning the dishes, and laundry. She also estimated she uses the vacuum approximately once every two weeks. The claimant denied being able to do any yard work, such as mowing her lawn, with a push

mower because of the pain in her feet. [R. 301]. On physical examination, Dr. Moody noted that she had a normal gait and was able to get on and off the exam table on her own without difficulty. [R. 302]. Straight leg raising was negative. [R. 303]. There was no evidence of any sensory deficit. Id. Dr. Moody's diagnoses:

> 1. Bilateral foot pain. The claimant has complaints of longstanding pain in her feet which has increased over the past year. She has had several surgeries on the right foot, but these appear to be unrelated to her current complaint. She is most prominently sore on the soles of both feet, and her symptoms on exam are consistent with plantar fasciitis.
>
> 2. Chronic headaches. The claimant indicated she has had longstanding headaches, and she stated she now averages approximately three severe headaches per month. She has reportedly been diagnosed with migraine headaches, and her symptoms are consistent with this diagnosis.

[R. 304].

On August 21, 2007, an MRI of the lumbar spine showed a small left posterolateral disk protrusion on L4-5 producing mass effect upon the left L5 nerve root. [R. 340]. There were also minimal central disk protrusions at L1-2 and L2-3 with minimal soft tissue extending inferiorly from the L2-3 disk behind the L3, vertebral body, probably of no significance. Id. On August 30, 2007, the plaintiff underwent a lumbar laminectomy and diskectomy at L4-5 on the left. [R. 329].

At the hearing, the plaintiff testified about her foot pain:

> My feet, I've had on my right foot, I've had three tumors taken off my right foot and there's one on it now. I've had to go in, they had to go in and break my big toe and another part of my foot and I had screws and pins in it then. Then they had to go back in and take that out. And my left leg it, the sciatic nerve is up under the disc in my back and they did back surgery to try to correct my left leg and my feet. The bottom of my feet just feels like

> somebody's hitting them with a sledgehammer and they're on fire, that's the reason I keep moving is my feet.

[R. 63]. She also testified to having three to four migraines a month that last from one day to three days, and she has to lie down in a dark room during those days. [R. 64]. She said she had back pain that radiates into her legs, and she rated it at an eight out of 10. [R. 65]. Because of her pain and medication side effects, she testified that she has to lie down three to four hours a day. Id.

The ALJ found that the plaintiff's testimony regarding the intensity, persistence and limiting effects of her symptoms was not credible:

> In terms of the claimant's alleged headaches, the degree of frequency and limiting effects are doubtful. The consultative examination noted how pain medications, dark rooms, and Phenergan will help her some (Exhibit 8F). Over a period of approximately 15 months from May 2007 to August 2008, the claimant's most recent set of medical records (from Henry Darnell, M.D. at Exhibit 14F) noted about five visits for headaches. At no time were headaches the only chief complaint during that period. Also, there is indication that only internists and family practitioners have been treating the claimant for her headaches, not specialists whereas she did have referrals to specialists for back problems and gastroenterological problems.

[R. 20]. The ALJ also doubted the plaintiff's testimony regarding her back and foot pain:

> As far as back/leg pain, and foot pain, the degree of pain is in doubt as well. For example, there is only one visit to Dr. Darnell in Exhibit 14 where bilateral foot pain is noted as a chief complaint; a constant "10" is not credible. Likewise, a constant "8" lower back/leg pain, is not credible when there is one such chief complaint one week with that pain indicated, and the next week there is notation of improvement in the legs. Moreover, Dr. Darnell has noted how Lyrica works great for pain, but she cannot afford it. Also casting further doubt on the claimant's degree of pain and daily limitations including fatigue, Dr. Darnell recorded how the claimant had a 4-wheeler accident in August 2008 and how she had back pain from lifting dog food.

> From August 2007 to April 2008, records indicate Nolan L. Hudson, M.D. was treating the claimant for the lower back pain that radiates into her left leg (Exhibit 13F). That was the only chief complaint she had in her initial visit with Dr. Hudson in August 2007; he added Lyrica in September 2007 to treat the radicular pain in her left leg. Again, she remarked to Dr. Darnell how well Lyrica works. In October 2007, she visited Dr. Hudson because of a headache and continued back pain; she also remarked to Dr. Hudson that Lyrica helps. There was never a chief complaint of bilateral foot pain to Dr. Hudson although the claimant alleged a constant pain of "10" at the hearing.
>
> Furthermore, the consultative examiner notations included a normal gait, no sensory deficit, and no significant neurological deficit (Exhibit 8F). He noted her foot pain is consistent with plantar fasciitis.

[R. 20]. The ALJ's credibility finding is not supported by substantial evidence.

The medical evidence shows that the plaintiff has suffered from migraine headaches from 2003. [R. 272]. On November 17, 2003, Henry Darnell, M.D., noted the plaintiff complained of a migraine headache lasting six days. Id. She saw Dr. Darnell for migraine headaches on March 17, 2004, March 3, 2005, and October 13, 2005. [R. 274, 278, 285]. Dr. Darnell prescribed Nubain and Phenergan on these occasions. On January 11, 2006, the plaintiff requested that Dr. Darnell give her an injection to alleviate the pain. [R. 289]. On February 9, 2006, the plaintiff told Dr. Darnell that she was suffering from headaches at least twice a week and narcotic pain medicine was not helping. [R. 292]. She saw Dr. Darnell for migraine headaches on October 2, 2006, January 4, 2007 and February 15, 2007. [R. 294, 365, 366]. On May 14, 2007, Dr. Darnell described her headaches as being "frequent." [R. 438].

On September 17, 2007, Nolan L. Hudson, M.D., noted her migraine headaches to be "chronic – condition uncontrolled." [R. 402]. On October 30, 2007, Dr. Hudson prescribed nortriptyline and Phenergan for the plaintiff's chronic migraines. [R. 404]. Dr. Hudson noted:

> (1) the patient continues to have headaches. She has been under a great deal of stress recently. She says that she has taken xanax in the past and that it has been beneficial for her headache. I will continue her nortriptyline and I gave her xanax as well. I told her to be careful with the use of her xanax. (2) she plans to get an epidural series [f]or back pain. She says that the Lyrica helped her but she cannot afford it.

[R. 405]. Dr. Hudson saw the plaintiff again for chronic migraines on February 4, 2008. [R. 407]. On May 12, 2008, she reported to Dr. Darnell that her latest migraine headache had lasted two and a half days. [R. 431]. The last treatment note from Dr. Darnell on August 18, 2008, references frequent migraines. [R. 429].

Similarly, the medical evidence also shows the plaintiff has complained of low back pain as early as May 15, 2004. [R. 229]. At that time, the plaintiff's back pain was described as radiating down her legs at a level of 10 out of 10. [R. 232]. On July 21, 2005, the plaintiff complained of moderate foot pain which was "constant, achy, worse with activity." [R. 260]. She was treated for a bunion and Morton's neuroma[1], which was excised on August 1, 2005. [R. 259-60]. On February 15, 2007, the plaintiff was still complaining of right leg and foot pain. [R. 365]. On January 4, 2007, Dr. Darnell noted

---

[1] Morton's neuralgia is "a form of foot pain, metatarsalgia caused by compression of a branch of the plantar nerve by the metatarsal heads; chronic compression may lead to formation of a neuroma." Dorland's Illustrated Medical Dictionary 1127 (28th Ed. 1994).

the plaintiff complained of low back pain radiating into her right hip and leg. [R. 366] ON August 28, 2007, she told Samuel R. Bowen, II, M.D., of a one-year history of sharp, shooting back pain which radiates into her legs, which is aggravated by walking and relieved by lying down. [R. 338]. On August 30, 2007, Dr. Bowen performed a lumbar laminectomy and diskectomy at L4-5 on the left to repair a herniated nucleus pulposus. [R. 329]. By September 17, 2007, she was still having radicular pain in her left leg, and Dr. Hudson added Lyrica 75 mg twice a day for pain. [R. 402]. On October 1, 2007, she reported to Dr. Bowen that her pain had not gotten much better since the surgery. [R. 343]. Her back pain continued on October 30, 2007. [R. 403]. On February 4, 2008, Dr. Hudson described her lower back pain as "uncontrolled," and gave her a prescription for Percocet. [R. 408]. By March 4, 2008, she told Dr. Hudson that her worst pain is in her lower back which radiates down into her legs. [R. 412].

      The medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). As Judge Allgood observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of

appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988). Because the reasons given by the ALJ for failing to credit the plaintiff's pain testimony are not supported by substantial evidence, her testimony regarding her pain must be accepted as true.

At the hearing, the ALJ questioned Susan E. Heape, Ph.D., a vocational expert:

> Q: If I were to find the claimant's testimony to be fully credible as supported by the record as a whole would she be capable of performing her past work or any other work?
>
> A: No, Sir.
>
> Q: What's the basis of your opinion?
>
> A: She's told us about pain that prevents her from focusing. Also, the side effects of medication would, would render her drowsy, because of the pain which she's described, I believe is at an eight in some parts of her body, up to a ten in her feet, she has to lie down three to four hours daily. She also has the fibromyalgia which creates a fatigue situation for her. She has frequent headaches. All of the things she's described would prevent her from attending, concentrating, persisting and being a reliable worker as far as focusing on job tasks.

[R. 68-69].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In

such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

DONE and ORDERED 13 July 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.